IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TAREK ELSISY                          )
                                      )
      Plaintiff,                      )
                                      )
      v.                              )          1:08CV67
                                      )
THE PEP BOYS-MANNY, MOE & JACK        )
                                      )
      Defendant.                      )

## MEMORANDUM OPINION AND ORDER

OSTEEN, JR., District Judge.

      This matter is before the court on Defendant's Motion to

Dismiss or, in the Alternative, to Stay this Action and Compel

Arbitration.[1]  (Doc. 6.)  For the reasons set forth herein, the

Defendant's Alternative Motion to Stay the Action and Compel

Arbitration will be granted.  Defendant's Motion to Dismiss will

be denied.

## I.   BACKGROUND

---

      [1] Although captioned as a motion to dismiss, the motion also
includes an alternative motion to stay the proceedings.
Accordingly, the consideration of affidavits in support of the
motion to stay, as well as undisputed facts contained in the
pleadings, is appropriate on the issue of the motion to stay.
Defendant has moved to dismiss the complaint pursuant to Federal
Rules of Civil Procedure 12(b)(1) and 12(b)(6), but has not
alleged any basis for dismissal on these grounds other than the
arbitration agreement issues.  A further discussion of whether
the proceedings should be stayed or dismissed is contained infra,
Section IIIB.

Tarek Elsisy was initially employed by The Pep Boys - Manny, Moe, and Jack ("Pep Boys" or "Defendant") in November 2005 at store number four in Raleigh, North Carolina. (Pl.'s Am. Resp. to Def.'s Mot. to Dismiss 2, Doc. 11.) Three months after his employment began at the Raleigh Pep Boys store, Mr. Elsisy signed an Arbitration Agreement providing:

> In return for my employment with The Pep Boys – Manny, Moe & Jack, or a related company, and/or consideration for such employment, and for the mutual promises herein, Applicant/Employee . . . and the Company . . . agree that:
>
> Any disputes, claims, complaints or controversies ("Claims") which may arise between me and The Pep Boys – Manny, Moe & Jack . . . which are directly or indirectly related to my employment with the Company, the terms and conditions of my employment, my application for employment and/or the termination of my employment will be resolved by Arbitration and NOT by a court or jury.

(App. to Def.'s Mot. to Dismiss, Ex. B at 1, Doc. 7.) Around July 17, 2006, Mr. Elsisy gave notice of his intention to terminate his employment at the Raleigh store. (Pl.'s Am. Resp. to Def.'s Mot. to Dismiss 2, Doc. 11.)

Approximately ten days later, Mr. Elsisy began working for Crown BMW in Greensboro. (Id.) He worked for Crown for two to three weeks, but soon sought alternative employment due to a decrease in income he experienced while working there. (Id.) He inquired at the Greensboro Pep Boys store regarding employment, and subsequently began working at the store around August 28,

-2-

2006.[2]  (Id. at 2-3.)  Greensboro store manager Randy Brent found

that Mr. Elsisy's prior employment information with the Raleigh

store remained in the company's computer system.  (Id. at 3.)

While working at the Greensboro Pep Boys store, Mr. Elsisy

alleges that he experienced repeated harassment and

discrimination because he is a Muslim of Egyptian descent.

(Compl. ¶ 7, Doc. 1.)  Mr. Elsisy also alleges that he

experienced constant problems in his efforts to perform his

duties as an automobile technician. (Id. ¶ 8.)  He contends that

he reported the harassment to both the local manager and the

district manager, but neither took any action to address the

problems.  (Id. ¶ 9.)  Further, Mr. Elsisy alleges that he

received an inadequate amount of work based on discrimination,

resulting in his constructive discharge when he was forced to

resign in October 2006. (Id. ¶ 13.)

On October 24, 2006, Mr. Elsisy filed a charge with the

Equal Employment Opportunity Commission ("EEOC"), alleging

violations of Title VII of the Civil Rights Act of 1964 ("Title

VII") on the basis of religion and national origin by Defendant.

(Id. ¶ 14.)  The EEOC found that the evidence showed Mr. Elsisy

was constructively discharged as a result of a hostile work

---

[2] The parties disagree as to whether Mr. Elsisy's employment
at the Greensboro Pep Boys store constitutes a new employment
relationship with the company or was merely a "transfer" between
stores.  For the reasons set forth later in this opinion, the
distinction is irrelevant.

-3-

environment, as well as found that there was sufficient evidence to establish that he was discriminated against based on his religion and national origin. (<u>Id.</u> ¶ 15.) Mr. Elsisy then filed a lawsuit with this court in January 2008, alleging violations of Title VII, Title I of the Civil Rights Act of 1991, and 42 U.S.C. § 1981a. (Compl. ¶ 1.)

The Defendant subsequently filed a Motion to Dismiss or, in the Alternative, to Stay the Action and Compel Arbitration. (Doc. 6.) Defendant argues that Mr. Elsisy's claims should be dismissed "because he agreed to submit the very claims now presented to this Court to arbitration before either the American Arbitration Association ('AAA') or the Judicial Arbitration and Mediation Services ('JAMS')." (Def.'s Mem. in Supp. of Mot. to Dismiss 4, Doc. 8.)

## II. QUESTIONS PRESENTED

The first question raised by Defendant in its motion to dismiss is "[w]hether the court should dismiss Plaintiff's action because he entered into a valid and enforceable arbitration agreement with Pep Boys and compel binding arbitration of his dispute with the Company." (Def.'s Mem. in Supp. of Mot. to Dismiss 3, Doc. 8.) Should this court find that the arbitration agreement is enforceable and arbitration should be compelled, the second question is whether the proceedings should be stayed pending arbitration or dismissed altogether.

## III. DISCUSSION

-4-

## A.  Enforceability of the Arbitration Agreement

Fourth Circuit case law dictates:

> a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."

Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002) (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)).

Plaintiff in this case generally challenges the second element of the above analysis: the existence of a valid arbitration agreement at the time of his employment with the Greensboro Pep Boys store.  Specifically, Plaintiff alleges that no mutual agreement to arbitrate existed following his employment with the Greensboro Pep Boys on August 17, 2006; that the arbitration agreement is not supported by adequate consideration; and that the contract is unenforceable because it is indefinite as to its duration, time, and terms.  (Pl.'s Am. Resp. to Def.'s Mot. to Dismiss 4-8, Doc. 11.)

There is no question that Mr. Elsisy signed an arbitration agreement when he was employed by the Raleigh Pep Boys store. Plaintiff claims that, regarding the present dispute with the Greensboro store, the agreement is unenforceable because there was no mutual agreement to arbitrate between the parties and that

-5-

the contract is not supported by adequate consideration.  He

contends that "[t]he only stated consideration in the Arbitration

Agreement is '[i]n return for my employment with [Pep Boys]

and/or consideration for such employment.'"[3]  (Id. at 4.)  Mr.

Elsisy further states that "[n]owhere in the remaining text of

the Arbitration Agreement does Pep-Boys make the same mutual

promise" to arbitrate all claims and give up the right to a

judicial forum.  (Id.)

The issue of whether an arbitration agreement exists between

parties is generally a question of state contract law.  See First

Options of Chi., Inc. v. Chaplan, 514 U.S. 938, 944 (1995).  In

determining which state's contract law applies, this court must

apply North Carolina's conflict of laws analysis.  See Eli

Research, Inc. v. United Commc'n Group, LLC, 312 F. Supp. 2d 748,

754 (M.D.N.C. 2004).  "For a contract claim, the governing law is

determined by lex loci contractus, the law of the place where the

contract was formed."  Id. (citing Fortune Ins. Co. v. Owens, 352

N.C. 424, 428, 526 S.E.2d 463, 466 (2000)).  Based on the fact

that Mr. Elsisy signed the arbitration agreement in Raleigh, and

the fact that both parties cite North Carolina law in support of

their positions, this court will apply North Carolina contract

---

[3] Mr. Elsisy had already been employed with the Raleigh
store for three months when he signed the arbitration agreement.
(Pl.'s Am. Resp. to Def.'s Mot. to Dismiss 4, Doc. 11.)

law in determining whether the arbitration agreement is enforceable.

North Carolina has a strong public policy favoring arbitration and, where there is any doubt concerning the existence of an arbitration agreement, it should be resolved in favor of arbitration. <u>Martin v. Vance</u>, 133 N.C. App. 116, 120, 514 S.E.2d 306, 309 (1999); <u>see also</u> <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983) ("questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."). Further, North Carolina law makes it clear that "[w]here each party agrees to be bound by an arbitration agreement, there is sufficient consideration to uphold the agreement." <u>Martin</u> at 120, 514 S.E.2d at 310 (<u>citing</u> <u>Johnson v. Circuit City Stores</u>, 148 F.3d 373, 378 (4th Cir. 1998)).

The arbitration agreement at issue in this case provides more than just Pep Boys' agreement to be bound by the arbitration process – it is also a mutual agreement by both sides to arbitrate all covered claims. Specifically, the section entitled <u>Covered Claims and Waiver of Right to Judicial Resolution of Covered Claims</u> provides: "all claims which I may have with or against the Company, or the Company may have with or against me . . . are subject to arbitration pursuant to the terms of this Agreement . . . ." (App. to Def.'s Mot. to Dismiss, Ex. B at 2, Doc. 7) (emphasis added). In bold print, the agreement further

-7-

provides that "[t]he parties understand that this means they are
giving up the right to have any Covered Claims decided by a judge
or jury."[4]   (Id. at 1.)   For these reasons, the arbitration
agreement cannot be said to lack mutuality or adequate
consideration.

Regarding Mr. Elsisy's argument that the contract should not
be enforced because it is indefinite as to duration, time, and
terms, the court also finds this argument unpersuasive.  The
court cannot locate any law that gives it the authority to
invalidate an arbitration agreement simply because the agreement
does not terminate on a specific date.  While the agreement does
"survive[] the termination of the employee's employment with the
Company" – admittedly an indefinite time period – the agreement
does not apply to all claims whatsoever that Mr. Elsisy may have
with Pep Boys.  Rather, the arbitration agreement is limited to
claims directly or indirectly relating to his employment and/or

---

[4] Plaintiff argues that this provision "is ambiguous, due to
the Judicial Enforcement paragraph provisions as well as
'parties' not being defined in the Arbitration Agreement."
(Pl.'s Am. Resp. to Def.'s Mot. to Dismiss 5, Doc. 11.)   The
court finds this argument unpersuasive.  First, the word
"parties" clearly suggests that the provision intends to bind
more than one person, and since only Mr. Elsisy and Pep Boys were
signatories to the contract, there can be no other "party" to
which this term could refer.  Nor does the Judicial Enforcement
section render the agreement ambiguous.  As Defendant points out,
this provision "merely affirms applicable law" and recognizes
that, under the FAA, all parties "retain the right to bring an
expedited civil action seeking to vacate an arbitration award
under extremely limited circumstances." (Def.'s Reply Mem. in
Supp. of Mot. to Dismiss 5, Doc. 12) (quoting Choice Hotels Int'l
v. SM Prop. Mgmt., LLC, 519 F.3d 200, 206-07 (4th Cir. 2008)).

-8-

the termination of his employment with the Company.  Given that
Mr. Elsisy's employment with Pep Boys was "at-will" (App. to
Def.'s Mot. to Dismiss, Ex. B at 2, Doc. 7), it makes sense for
the arbitration agreement to be indefinite as to its duration.
The duration and scope of the agreement are defined by
circumstances (i.e., term of employment, type of claim, etc.)
rather than a certain date.

Finally, Plaintiff contends that any rights and
responsibilities contained in the arbitration agreement, if it is
enforceable, were terminated when he ended his employment with
the Raleigh store on July 17, 2006.  (Pl.'s Am. Resp. to Def.'s
Mot. to Dismiss 5, Doc. 11.)  Specifically, Mr. Elsisy argues
that he "did not sign or agree to arbitrate matters specific to
new employment at Pep Boys Greensboro."  (Id.)  Again, this
argument is unavailing.  The arbitration agreement provides that
it "will survive the termination of the employee's employment
with the Company, as well as the termination or expiration or any
benefit of such employment."  (App. to Def.'s Mot. to Dismiss,
Ex. B at 2, Doc. 7.)  It further provides that "[i]n the event
that Employee's employment with the company is severed or
terminated and Employee is subsequently re-employed by the
Company, this Agreement will remain in full force and effect
during such subsequent employment and will survive the
termination of such subsequent employment."  (Id.)

-9-

This language makes it irrelevant whether Mr. Elsisy's employment with the Greensboro store was a "transfer" from the Raleigh store or was a "rehire." The arbitration agreement is not an employment contract; rather, it is a mutual agreement to arbitrate all disputes arising out of Mr. Elsisy's employment with the Pep Boys company generally. It is also irrelevant that there was a period where Mr. Elsisy was not employed by the company, since the arbitration agreement makes clear that it is still in effect during any lapse, as well as during his re-employment at the Greensboro store, and following his termination at that store.

In sum, the arbitration agreement Mr. Elsisy signed while employed at the Raleigh Pep Boys store is valid and enforceable. Both parties mutually agreed to arbitrate covered claims and to abide by the arbitration process. Furthermore, the arbitration agreement applies to all claims relating to Mr. Elsisy's employment at either the Pep Boys' Raleigh or Greensboro store, and therefore the agreement was in effect at the time Mr. Elsisy alleges he was constructive discharged in August 2006. Since the present dispute arises out of Mr. Elsisy's employment at Pep Boys, Mr. Elsisy's claims are subject to arbitration and Pep Boys' motion to compel arbitration should be granted. See Adkins, 303 F.3d at 500-01.

## B. Stay Pending Arbitration Versus Dismissal

-10-

Having determined that the parties in this case agreed to arbitrate the present claims, the question remains whether this action should be dismissed or stayed pending arbitration. The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). Despite the plain language of § 3 requiring district courts to stay proceedings pending arbitration, courts within the Fourth Circuit have noted that, when all the issues presented in a lawsuit are arbitrable, dismissal may be the proper remedy. See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001); see also Payton v. Nordstrom, Inc., 462 F. Supp. 2d 706, 708-09 (M.D.N.C. 2006) (granting defendant's motion to dismiss where all claims were sent to arbitration); Ingram-Allen v. Iveys, 2004 WL 1462024, at *2 (M.D.N.C. Feb. 26, 2004) (dismissing lawsuit where all the plaintiff's claims were required to be arbitrated).

Nonetheless, it remains unclear whether a district court should follow the plain language of the FAA and stay proceedings

-11-

pending arbitration, or automatically dismiss the claims if they are entirely arbitrable. In Choice Hotels, while the court noted that dismissal is a proper remedy where all the issues are arbitrable, they also recognized that "the FAA requires a district court, upon motion by any party, to stay judicial proceedings involving issues covered by written arbitration agreements." Choice Hotels, 252 F.3d at 709-10 (emphasis added). In that case, the proceedings at issue were actually stayed, not dismissed. Furthermore, while the district courts in both Ingram-Allen and Payton chose to dismiss rather than stay the plaintiffs' claims, it does not appear that a stay was requested by either plaintiff in those cases. Specifically, in Payton, plaintiff did not even respond to defendant's motion to compel arbitration, much less request a stay instead of dismissal. See Payton, 462 F. Supp. 2d at 708-09. A review of the filings in Ingram-Allen reveals that while the pro se plaintiff opposed the defendant's motion to dismiss, she did not request a stay of the proceedings pending arbitration. (See Pl.'s Resp. to Def.'s Mot. to Dismiss, Ingram-Allen v. Iveys, 1:03CV196, Doc. 9.)

In this case, Mr. Elsisy has specifically requested that, if his claims are ordered to arbitration, the case be stayed rather than dismissed so that either party may return to this court for the purpose of vacating any award. (Pl.'s Am. Resp. to Def.'s Mot. to Dismiss 8, Doc. 11.) Other cases from this district, including one cited by the Defendant, demonstrate that a court

-12-

may choose to stay the proceedings pending arbitration instead of dismissing the claims completely.  See, e.g., Moye v. Duke Univ. Health Sys., Inc., 2007 WL 1652542 at *10 (M.D.N.C. June 5, 2007) (denying defendant's alternative motion to dismiss and instead staying the proceedings pending arbitration).

Accordingly, at the request of Mr. Elsisy and pursuant to the plain reading of the FAA mandating district courts to issue a stay, the court in this case will stay the proceedings pending arbitration.

## IV.  CONCLUSION

For the reasons set forth above, it is hereby ORDERED that Defendant's Alternative Motion to Stay the Action and Compel Arbitration is GRANTED.  Defendant's Motion to Dismiss is DENIED.

Plaintiff is hereby ORDERED to submit his claims to arbitration in accordance with the terms and conditions of the Mutual Agreement to Arbitrate Claims within sixty (60) days of the entry of this order.

IT IS FURTHER ORDERED that the parties are to file a status report with the court every 150 days describing the status of the arbitration, and the parties shall notify the court within thirty (30) days of completion of the arbitration.

IT IS FURTHER ORDERED that this action be STAYED pending completion of the arbitration of Plaintiff's claims or further order of this court.

-13-

This the _17th_ day of December, 2008.

_William L. Osteen, Jr._
United States District Judge

-14-